# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| STRATEGIC LENDING SOLUTIONS LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 13-cv-08232 |
| v. | ) ) | Judge Andrea R. Wood |
| UNITED DEFENSE GROUP LLP, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Brian Knight ("Knight") and Strategic Lending Solutions ("SLS") have brought this lawsuit against Defendants Nelson Chase ("Chase"), Chase Enterprises I, LLC, Chase Enterprises, Inc., and Chase Companies, LLC (together with Chase, the "Chase Defendants") and United Defense Group LLP ("UDG"), alleging that they breached contracts to provide legal services to Plaintiffs by fraudulently concealing the relationship between the Chase Defendants and UDG so that they could collect two retainers instead of one. Now before the Court are Defendants' motions to dismiss the complaint, to transfer venue, and for sanctions, as well as Plaintiffs' motion for partial summary judgment. For the reasons provided below, the Chase Defendants' motion to dismiss and for sanctions (Dkt. No. 19) is granted in part and denied in part, UDG's motion to dismiss or to transfer venue (Dkt. No. 9) is denied, and Plaintiffs' motion for partial summary judgment (Dkt. No. 34) is denied. The previous iterations of Plaintiffs' motion for partial summary judgment (Dkt. Nos. 30, 31) are denied as moot.

## Background

Unless otherwise indicated, the following facts are drawn from the Complaint. In November 2007, SLS made a loan to another company, which in return began making loan

payments to SLS by check. (Compl. ¶ 9, Dkt. No. 1.) SLS deposited the loan payment checks with its bank, Harris Bank, N.A. ("Harris"). (*Id.*) However, a number of the checks were soon returned to SLS marked "not sufficient funds." (*Id.*) Knight, as manager of SLS, received a call form Harris's fraud investigation department on or about August 1, 2008 inquiring about the bounced checks and requesting a meeting with Knight. *(Id.* ¶ 10.) After the meeting, Knight became concerned that Harris might take action against SLS for depositing the bad checks. (*Id.*) As a result, Knight contacted UDG for legal assistance. (*Id.* ¶ 11.)

On August 15, 2008, Plaintiffs and UDG entered into a retainer agreement ("Retainer Agreement") under which Plaintiffs agreed to pay UDG $15,000 in consideration for UDG representing Plaintiffs "in the event that Harris were to pursue Plaintiffs." (*Id.* ¶ 12.) The Retainer Agreement, which is attached to the Complaint, appears to be for "representation during a Fraud/Theft investigation" and states that, "[s]hould charges be filed, the $15,000 would be applied to a new Agreement." (Compl. Ex. 1 at 2, Dkt. No. 1-1.) The Retainer Agreement further provides that "at no additional cost to the undersigned, the Law Firm may have more than one Attorney work on Client's case" and that "the Law Firm may divide a portion of the fee with other Attorneys who are not partners or associates of the Law Firm. However, the undersigned's fee will not be increased because of any such division of fees." (*Id.*) The version of the Retainer Agreement attached to the Complaint is signed only by Knight; it is not signed by any representative of UDG.[1] (*Id.*)

On August 18, 2008, UDG introduced Plaintiffs to Chase. According to Plaintiffs, in that initial meeting, "and in every conversation and other correspondence thereafter, both Chase and United Defense represented that they were separate entities and that the only connection between

---

[1] In their response to Defendants' motions to dismiss, Plaintiffs insist that a copy of the Retainer Agreement signed by both parties exists and they believe it will turn up in the course of discovery. (Pl.'s Resp. at 5, Dkt. No. 21.)

the two were [*sic*] that Chase's son was an employee of United Defense." (Compl. ¶ 14.) Plaintiffs allege that Chase "conveyed to Plaintiffs that Chase would be able to assist Plaintiffs if Harris were to ever pursue Plaintiffs, and in order to do so, Plaintiffs were to pay a retainer fee of $25,000 to Chase." (*Id*. ¶ 16.) SLS wired the requested $25,000 retainer to Chase on September 18, 2008. (*Id.*) Plaintiffs claim that they were unclear if Chase was personally representing them or if one of Chase's companies (*i.e.*, Chase Enterprises I, Chase Enterprises, Inc., or Chase Companies, LLC) was representing them. (*Id*. ¶ 17.) There was no written retainer agreement between Plaintiffs and any of the Chase Defendants. (*Id*. ¶ 18.) The Chase Defendants never had any contact with Harris and the services that they provided to Plaintiffs consisted solely of reviewing documentation provided to them by Plaintiffs. (*Id*. ¶ 19.)

Harris eventually decided not to pursue Plaintiffs. (*Id*. ¶ 10.) Nonetheless, both UDG and Chase kept the amounts paid to them by Plaintiffs: $15,000 to UDG and $25,000 to Chase. Plaintiffs did not receive any bill or other accounting of time showing how their retainers had been utilized. (*Id*. ¶ 21.)

Plaintiffs allege that they became aware Chase "was and remains a Senior Partner at United Defense" just a few months before they filed the Complaint in November 2013. (*Id.* ¶ 15.) Plaintiffs claim that UDG breached its obligations under the Retainer Agreement by having them pay an additional fee to a UDG attorney and by failing to provide Plaintiffs with an accounting of time and expenses. (*Id.* ¶ 26.) Plaintiffs also allege that the Chase Defendants breached their obligations under their oral contract with Plaintiffs (as there was no written retainer agreement) by concealing that Chase was a partner at UDG in order to receive an additional fee and by failing to provide Plaintiffs with an accounting of time and expenses. (*Id.* ¶ 27.) Plaintiffs additionally claim that that all of the Defendants committed fraud when they "omitted and even actively concealed

the fact that Chase was a partner in United Defense." (*Id.* ¶¶ 31-33.) Plaintiffs seek $40,000 in actual damages for the retainer fees and $120,000 in punitive damages.

For the purposes of Plaintiffs' motion for partial summary judgment, it should also be noted that certain facts are disputed by the Chase Defendants. Specifically, the Chase Defendants deny that the cause of action alleged in the Complaint occurred in Illinois, claiming that the oral contract between Plaintiffs and Chase was entered into in South Carolina and that the $25,000 payment was negotiated in South Carolina. The Chase Defendants also claim that all of their communications with Plaintiffs and Harris were "initiated and conducted by phone calls initiating in South Carolina." (Chase Resp. at 2, Dkt. No. 38.) In addition, Chase admits that he was a partner at UDG in 2008, but states that he is not currently a partner. (*Id.*) Chase also admits that "to his knowledge, although threatened by the Bank, formal charges were never filed" against SLS. (*Id*. at 3.) He further asserts that the $25,000 retainer was for "future services" and that Plaintiffs in fact retained Chase for "substantial future services" other than the issues with Harris, such as the matters where Chase represented Plaintiffs in litigation currently pending in South Carolina.[2] (*Id.*)

## Discussion

**I.    Defendants' Motions to Dismiss**

The Chase Defendants and UDG have each filed a motion to dismiss the complaint.[3] "To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is

---

[2] Prior to the filing of this lawsuit, on December 17, 2012, Chase filed a lawsuit in federal court in South Carolina against SLS, Knight, LOP Capital LLC, and Michael Loprieno (who is also Plaintiffs' counsel in this matter) asserting claims for breach of contract, fraud, conspiracy to commit fraud, and *quantum meruit*. (Chase Mot. to Dismiss at 2, Dkt. No. 9; *Chase v. LOP Capital LLC et al*., No. 2:13-cv-00162 (D.S.C. 2012).) That litigation concerns a dispute over fees that Chase claims to be owed for representing LOP Capital LLC in other matters. (*See* Chase Mot. to Dismiss at 6.)

[3] The Chase Defendants expressly adopt and incorporate all of the arguments made by UDG.

plausible on its face.'" *Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). When reviewing a plaintiff's complaint, the Court must accept all of the plaintiff's factual allegations as true. *Id.* In contrast, conclusory allegations merely restating the elements of a cause of action do not receive this presumption. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

### A. Personal Jurisdiction

The Chase Defendants first argue that this Court lacks personal jurisdiction over them. They claim that they "have never had any contact in Illinois, which would rise to the level of personal jurisdiction," as the oral contract was executed in California, the services rendered were performed in South Carolina, and the payment for those services was mailed to Chase in South Carolina. (Chase Mot. to Dismiss at 4, Dkt. No. 9.) In response, Plaintiffs point out that Knight and SLS are both Illinois residents and that Chase's legal representation was needed as a result of events that took place in Illinois involving Harris. Plaintiffs further argue that Chase phoned and e-mailed Knight, who was in Illinois, and helped prepare Knight for a meeting with Harris in Illinois.

The Court finds that it may appropriately exercise specific personal jurisdiction over Chase and Chase Companies, LLC.[4] The Supreme Court has "emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another

---

[4] Plaintiffs do not take the position that general personal jurisdiction applies here.

state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1983) (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)). Indeed, "[j]urisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State." *Id.* at 476 (emphasis in original). Here, the allegations against Chase and Chase Companies, LLC concern "tortious misrepresentations expressly aimed at [Illinois] for the purpose of causing injury there." *Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir. 2012). Plaintiffs, who are Illinois residents, allege that they were deceived by UDG and Chase regarding their relationship, and as a result Plaintiffs paid for additional legal services that they would not have paid for had they been aware of the deception. Moreover, Plaintiffs allege specific conduct on the part of Chase regarding an oral contract for legal services and payment for the same. They also allege that Chase used the e-mail address chase@chasecompanies.com during the course of their correspondence regarding the Harris matter, thus directing activities toward Illinois residents to resolve an Illinois matter.

Nonetheless, the Court still must consider whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. at 477 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). The factors to be considered include:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. . . . [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional.

*Id.* (internal citations and quotations omitted). Illinois "has a strong interest in providing a forum for its residents to seek redress for torts inflicted by out-of-state actors and injuries suffered within

the state." *Felland*, 682 F.3d at 677. While Chase and Chase Companies, LLC may be inconvenienced by having to defend an action in another state, this is almost always the case with out-of-state defendants and these defendants have not demonstrated that the hardship would be "any greater than that routinely tolerated by courts exercising specific jurisdiction against non-residents." *Id.* Additionally, Plaintiffs may face a heavier burden since "defendants are spread across two different jurisdictions." *Id.*

While Plaintiffs have alleged specific actions by Chase and Chase Companies, LLC within this District, they have made no specific allegations regarding any involvement by Chase Enterprises I, LLC and Chase Enterprises, Inc. Plaintiffs merely allege that "it was unclear if Chase personally, or if one of Chase's associated companies . . . were representing Plaintiffs." (Compl. ¶ 17.) Plaintiffs also have not alleged that Chase Enterprises I, LLC and Chase Enterprises, Inc. reached out to Plaintiffs or intended to create continuing relationships with them. Accordingly, the motion to dismiss Chase Enterprises I, LLC and Chase Enterprises, Inc. for lack of personal jurisdiction is granted.

   **B.**  **Failure to Plead Fraud with Particularity**

UDG contends that Plaintiffs' fraud claim should be dismissed because they failed to plead it with particularity. Federal Rule of Civil Procedure 9(b) requires that "[i]in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). Accordingly, "parties pleading fraud in federal court, must state the time, place and content of the alleged communications perpetuating the fraud." *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir. 1991) (internal quotation omitted). Under Rule 9(b), the plaintiff must state "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which

the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992).

"In Illinois, as elsewhere, the elements of a common-law fraud claim are: '(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.'" *Cohen v. American Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013) (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996)).

Plaintiffs have sufficiently pleaded a claim for common law fraud. Specifically, Plaintiffs allege that they signed a contract with UDG providing that UDG was permitted to use other attorneys to assist with Plaintiffs' case without any additional charge to Plaintiffs; UDG introduced Plaintiffs to Chase and repeatedly represented "that they were separate entities and that the only connection between the two were that Chase's son was an employee of United Defense" (Compl. ¶ 14); Plaintiffs would not have agreed to pay the second, $25,000 retainer to Chase had they known Chase was a UDG partner; and they did not find out that Chase was in fact a UDG partner until shortly before filing the complaint. None of the Defendants contend that they did, in fact, inform Plaintiffs that Chase was a partner at UDG at any time. Although Chase instead argues that he did not actively conceal the relationship cannot because his partnership is listed on UDG's website, he does not contend that he was listed as a partner on UDG's website at the time the representations at issue were made. Plaintiffs' allegations, along with the additional detail provided in the Complaint, sufficiently plead the "who, what, where, when, and how" of the purported fraud. *See DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990).

### C. Amount in Controversy/Punitive Damages

Defendants argue that the amount in controversy in this case does not exceed $75,000 because Plaintiffs allege only $40,000 in actual damages. According to Defendants, the $120,000 in punitive damages sought by Plaintiffs are "derivative from the claim for Breach of Contract and Plaintiff[s] does not provide adequate proof of punitive damages." (Chase Mot. to Dismiss at 4-5.)

A litigant may invoke diversity jurisdiction in federal court only when the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). "Generally the amount in controversy claimed by a plaintiff in good faith will be determinative on the issue of jurisdictional amount, unless it appears to a legal certainty that the claim is for less than that required by the rule." *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 237 (7th Cir. 1995) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). When evaluating whether a lawsuit exceeds the amount-in-controversy threshold, courts consider all damages available to a plaintiff, including punitive damages. *See Oshana v. Coca–Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006). The Seventh Circuit has established a two-part test to determine whether punitive damages may be used to satisfy the jurisdictional amount in a diversity case:

> The first question is whether punitive damages are recoverable as a matter of state law. If the answer is yes, the court has subject matter jurisdiction unless it is clear "beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount."

*Cadek v. Great Lakes Dragway, Inc.*, 58 F.3d 1209, 1211-12 (7th Cir. 1995) (quoting *Risse v. Woodard*, 491 F.2d 1170, 1173 (7th Cir. 1974)).

Plaintiffs satisfy both parts of the two-step inquiry. First, Illinois common law provides for the recovery of punitive damages for fraud claims. *Kelsay v. Motorola, Inc.* 384 N.E.2d 353, 359 (Ill. 1978) ("It has long been established in this State that punitive or exemplary damages may be

awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.").

Second, to satisfy the amount in controversy requirement, Plaintiffs would need to be awarded punitive damages of at least $35,000 along with the $40,000 in actual damages requested in the Complaint's prayer for relief. The Supreme Court has set constitutional limits on the ratio of punitive damages to compensatory damages that may permissibly be awarded. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 410 (2003). While there is no precise mathematical formula to determine an appropriate ratio, "single-digit multipliers are more likely to comport with due process." *Philip Morris USA v. Williams*, 549 U.S. 346, 351 (2007) (citing *State Farm*, 538 U.S. at 425). Thus, a punitive damages award *less than* the amount of actual damages certainly would not offend constitutional due process concerns, and the Court is not aware of any other principle that would require a finding that such a punitive damages award would be legally impossible. Therefore, the Court finds that the amount in controversy requirement for federal diversity jurisdiction is satisfied in this case.

**D.    Statute of Limitations**

Defendants all argue that Plaintiffs' common law fraud claim is time-barred. Under the Illinois Code of Civil Procedure, unless otherwise provided, civil actions "shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205. Illinois courts, however, also follow the "discovery rule," which provides that the statute of limitations is tolled "until the injured party knows or reasonably should know of the injury and knows or reasonably should know that the injury was wrongfully caused." *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1028-29 (Ill. 2012).

At the motion to dismiss stage, Plaintiffs have alleged common law fraud sufficiently to survive a challenge on statute of limitations grounds. Although Plaintiffs allege that they made the retainer payments at issue sometime in August 2008 (and this lawsuit was not filed until November 2013), they contend that they only became aware of Chase's affiliation with UDG in the last few months before the lawsuit was filed. As previously noted, Defendants do not claim that they ever informed Plaintiffs of Chase's affiliation with UDG, nor do they claim that Chase has been listed on UDG's website as a partner for the past five years (an argument that the Court would not necessarily find determinative given the opposing allegation that UDG and Chase affirmatively represented that they were separate entities).

The Chase Defendants also ask the Court to dismiss Plaintiffs' breach of contract claim as time-barred. The statute of limitations applicable to a claim for breach of contract under Illinois law depends on whether the agreement at issue is an oral contract or a written contract. The limitations period for breach of a written contract is ten years, *see* 735 ILCS 5/13-206, while breach of an oral contract is subject to a five-year limitations period, s*ee* 735 ILCS 5/13-205. The distinction between the two is meaningful here, as the Retainer Agreement was allegedly entered into on August 15, 2008 and this lawsuit was not brought until November 15, 2013, three months over the five-year mark. The Chase Defendants contend that because the written Retainer Agreement was not fully executed, there was at best an oral contract and therefore the five-year statute of limitations applies to bar this action. Plaintiffs respond that the Retainer Agreement was signed by both parties and that "[a] fully executed agreement, notwithstanding any foul play, will surface in discovery," and therefore a ten-year statute of limitations applies. (Pl. Resp. at 5, Dkt. No. 21.)

As with their fraud claim, however, Plaintiffs have pleaded sufficient facts for their breach of contract claim to survive a motion to dismiss. Plaintiffs allege that both parties signed the Agreement and that, although they do not currently have a copy of the fully-executed Retainer Agreement signed by both parties, they expect to be able to produce one by the close of discovery. Plaintiffs are not required to present a copy of the Retainer Agreement at the pleading stage in order to avoid dismissal of their claims. The Court declines to infer that because Plaintiffs do not have a fully-signed copy on hand, one does not exist. Because the Court declines to hold that the Retainer Agreement should be treated as an oral contract (such that the five-year statute of limitations would apply), there is no need to consider whether Plaintiffs meet the standards for establishing fraudulent concealment. The motion to dismiss the contract claim as untimely is therefore denied.

### E. Venue

The Chase Defendants have also moved to dismiss this case based upon improper venue or, alternatively, to transfer it to the District of South Carolina pursuant to 28 U.S.C. § 1404 so that it can be joined with pending South Carolina litigation in which Chase claims he is owed fees from Plaintiffs, Plaintiffs' counsel, and LOP Capital LLC.[5]

When a defendant challenges whether venue is proper, the plaintiff bears the burden of establishing that it is proper. *See Hanyuan Dong v. Garcia*, 553 F. Supp. 2d 962, 964 (N.D. Ill. 2008). For a federal civil action, venue is proper in any of the following: (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated;

---

[5] According to Chase, Michael Loprieno, counsel for Plaintiffs in this matter, is the "sole member of LOP Capital, LLC." (Chase Reply at 2, Dkt. No. 24-1.)

or (3) if there is no district in which the action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b).

Plaintiffs argue that venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred here. The Court agrees. As alleged in the Complaint, a substantial part of the events at issue relate to legal representation for two parties located in the Northern District of Illinois – Knight and SLS – for a matter involving Harris, a bank based in the Northern District of Illinois. This District is an appropriate venue for this action.

Having established that venue is proper in this District, the Court next turns to the question of whether this case nonetheless should be transferred to the District of South Carolina pursuant to the doctrine of *forum non conveniens*. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To prevail, the moving party must show the following: "(1) venue is proper in this district; (2) venue and jurisdiction are proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interests of justice." *Annett Holdings v. Certain Underwriters at Lloyds*, No. 08-cv-1106, 2008 WL 2415299, at *2 (N.D. Ill. June 12, 2008). In ruling on a motion under § 1404, the Court considers the relevant factors "in light of all the circumstances of the case," an analysis that "necessarily involves a large degree of subtlety and latitude," including the relative weight to give to each of the factors. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

As discussed above, the allegations in the Complaint establish that venue is proper in this District. In contrast, the Court does not have enough information to know whether venue would

be appropriate in the District of South Carolina. Thus, the § 1404 analysis turns on the third and fourth factors.

With respect to the third factor, the movant "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219-20. This inquiry has its own five-element test. Courts consider (1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D. Ill. 2000). Here, Plaintiffs have chosen the Northern District of Illinois for their lawsuit. And the Court has already explained that a substantial part of the events or omissions giving rise to the claim occurred here—the allegations in the Complaint revolve around a dispute for legal fees for representation in connection with an Illinois matter, a potential (or actual) investigation by Illinois-based Harris into Illinois-based Plaintiffs' conduct. The remaining considerations for determining the more convenient forum do not weigh in favor of either the Northern District of Illinois or the District of South Carolina. Plaintiffs are based in Illinois, UDG in California, and the Chase Defendants in South Carolina; neither side has identified witnesses that would have to be called in connection with this matter from other areas; and documents in the possession of UDG or Chase in South Carolina can easily be transferred to the Plaintiffs using mail or electronic communications and vice versa. *See Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 840 (N.D. Ill. 2009) ("In this day and age, transferring documents from one district to another is commonplace and, given the widespread use of digital imaging in big-case litigation, no more costly than transferring them across town.").

Finally, Defendants have failed to present a compelling argument that the interests of justice favor South Carolina over Illinois. "Factors traditionally considered in an 'interest of

justice' analysis relate to the efficient administration of the court system," and "[i]n a diversity action it is also considered advantageous to have federal judges try a case who are familiar with the applicable state law." *Coffey*, 796 F.2d at 221. The Seventh Circuit "does not rigidly adhere to a first-to-file rule," and any analysis regarding the first-to-file only applies "where the facts of the case are replicated." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010). As of March 2014, the median time to trial in the District of South Carolina was 29.2 months, and the median time to trial in the Northern District of Illinois was 33.4 months—a difference of 4.2 months. *See* Federal Court Management Statistics, March 2014, *available at* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-march-2014.aspx. The Court does not consider the difference in time to trial to be significant to its analysis of the interests of justice. On the other hand, Illinois state law will likely determine the merits of Plaintiffs' claims, and a judge in the Northern District of Illinois is bound to be more familiar with Illinois state law than a judge from the District of South Carolina. *See Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009).

Defendants argue that the allegations raised by Plaintiffs in this case are "inextricably intertwined" with those in the South Carolina case. Specifically, they claim that because the Complaint alleges that in every conversation and correspondence Chase and UDG represented they were separate entities, the lawsuit here will necessarily raise questions about conduct that is also the subject of the South Carolina litigation. Chase further argues that his oral contract with Plaintiffs was for future services, and that the $25,000 payment therefore went to future representations beyond the Harris matter—namely, the South Carolina matters. Thus, according to Defendants, this case should be transferred to the District of South Carolina to be consolidated with the litigation there. In response, Plaintiffs argue that the South Carolina litigation has no

15

relationship to the issues presented here, as that action is based on fees that Chase claims Plaintiffs owe him for representations that took place after the Harris matter concluded. Plaintiffs contend that Chase did not begin to provide other future services until June 2009, and it would stretch credibility to argue that Plaintiffs paid Chase $25,000 in September 2008 for services they were not aware they needed until June 2009. Plaintiffs also point out that the district court in South Carolina denied a motion by Chase to compel production of documents and interrogatory responses related to the Harris matter as irrelevant to the South Carolina litigation.

This Court is not persuaded that the issues presented here are in fact "inextricably intertwined" with those raised in the South Carolina case. The issues presented to this Court relate to two contracts for legal services regarding the Harris investigation. The key questions for this case of whether UDG and Plaintiffs had a written contract, whether UDG or Chase provided legal services in connection with the Harris matter, whether UDG or Chase failed to disclose that Chase was a partner at UDG, and whether UDG or Chase owed Plaintiffs an accounting for their work on the Harris matter do not appear to relate to the lawsuits in which Chase represented the Plaintiffs in South Carolina. Moreover, Plaintiffs' Complaint does not contain any allegations regarding legal work on non-Harris matters, and Defendants have not demonstrated that the issues in this case and the South Carolina litigation are likely to overlap.

In sum, Plaintiffs have established that the Northern District of Illinois is a proper venue for this case and Defendants have failed to convince the Court that the District of South Carolina would be a more appropriate venue. Accordingly, Defendants' motion to dismiss for improper venue or to transfer venue is denied.

## F. Request for Rule 11 Sanctions

The Chase Defendants also move for sanctions against Plaintiffs under Rule 11 of the Federal Rules of Civil Procedure on the grounds that this lawsuit was filed to retaliate against Chase for the lawsuit he filed against Plaintiffs and their attorney in federal court in South Carolina.

An attorney who signs a complaint certifies that to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that, among other things, "[the action] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). If the Court determines that Rule 11(b) has been violated, then it may impose an appropriate sanction on the attorney or party. Fed. R. Civ. P. 11(c)(1). All Rule 11 motions "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). The motion should not be filed until 21 days after service to give opposing counsel the opportunity to withdraw or correct the claim. *Id.*

Here, the Chase Defendants did not file their Rule 11 motion for sanctions separately from their motion to dismiss. This procedural error alone would be sufficient to deny the motion. *See TriTeq Lock & Sec. LLC v. Innovative Secured Solutions, LLC*, No. 10 CV 1304, 2012 WL 394229, at * 8 (N.D. Ill. Feb. 1, 2012). Furthermore, in their motion the Chase Defendants state only that they "provided Plaintiffs' counsel with an opportunity to dismiss the case and he has refused." (Chase Mot. to Dismiss at 6.) They do not specify that they served the motion on opposing counsel 21 days prior to filing it. "Notice plays a central part in the Rule 11 process." *Feldman v. Olin Corp.*, 692 F.3d 748, 758 (7th Cir. 2012); *see also de Silva v. Cinquegrani*, No. 11-cv-4259, 2014 WL 3954990, at *3 (N.D. Ill. Aug. 13, 2014) (noting the party that filed a Rule

11 motion "fails to cite to the record or show how such notice satisfied Rule 11's safe harbor requirement").

In addition to the procedural errors, the motion for sanctions also does not withstand scrutiny on the merits. While it remains to be seen whether Plaintiffs will prevail on their claims, the Chase Defendants have not shown that this case is frivolous and, indeed, the lawsuit has now survived a motion to dismiss (with the exception of the claims against Chase Enterprises Defendants). Additionally, Plaintiffs allege that they discovered Chase was a partner at UDG only a few months prior to filing the Complaint. Any history that the parties have been them regarding other conflicts, claims, or lawsuits is not sufficient to establish that the lawsuit filed here is frivolous or that it was filed merely to harass Plaintiffs, cause unnecessary delay, or needlessly increase the cost of litigation.[6] The motions for Rule 11 sanctions is denied.

## II. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs have filed a motion for partial summary judgment against Chase seeking return of the $25,000 retainer fee paid to him. In support of their motion, Plaintiffs argue that Chase breached the Retainer Agreement between Plaintiffs and UDG because Chase was a partner at UDG and yet collected an additional fee of $25,000 from Plaintiffs by pretending to be unaffiliated with the firm.

---

[6] In their reply brief, the Chase Defendants take the position that if Plaintiffs' counsel seeks to act as a witness regarding any of the supposed misrepresentations made by UDG or Nelson Chase, he should be required to withdraw from his representation of those parties. Illinois Rule of Professional Conduct 3.7 provides that "[a] lawyer shall not act as advocate at trial in which the lawyer is likely to be a necessary witness" unless the testimony relates to an uncontested issue or the nature and value of legal services rendered in the case. Thus far, Plaintiffs have not sought to use their attorney as a witness. To the contrary, Plaintiffs have consistently argued that the South Carolina matters, in which Plaintiffs' counsel is a party, are not relevant to this litigation. Should Plaintiffs seek to argue in the future that Plaintiffs' counsel witnessed the misrepresentations at issue in this case being made or was otherwise involved in the Harris matter, it may be necessary for the Court to revisit this matter. For the time being, however, there is no basis to disqualify Plaintiffs' counsel.

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). When presented with a summary judgment motion, "[t]he Court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Walbridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). In deciding the motion, the Court examines the record in the light most favorable to the non-moving parties, resolving all evidentiary conflicts in their favor and according them the benefit of all reasonable inferences that may be drawn from the record. *Coleman v. Donahoe,* 667 F.3d 835, 842 (7th Cir. 2012).

There are numerous genuine issues of material fact that preclude summary judgment at this early stage in the litigation. For instance, Plaintiffs have not yet established that the Retainer Agreement should be analyzed as a valid written contract signed by both parties. If the facts develop such as to require Plaintiffs to proceed on an oral contract theory, they may need to establish fraudulent concealment in order to toll the statute of limitations. In addition, Defendants claim that the Retainer Agreement between the Plaintiffs and UDG was for the theft/fraud investigation, while the oral contract between the Plaintiffs and Chase was for services to be provided in the event that Harris actually filed charges against Plaintiffs. Plaintiffs, on the other hand, contend that the $25,000 they paid to Chase pursuant to the oral agreement was also for legal services in connection with the Harris Bank investigation. "[S]ummary judgment cannot be used to resolve swearing contests between litigants." *Payne*, 337 F.3d at 770. Particularly given that the parties do not yet have the benefit of discovery materials to support their factual

contentions, there is no basis in the record for the Court to determine that one view of the facts is correct as a matter of law. Plaintiffs' motion for partial summary judgment is denied.

## **Conclusion**

For the reasons stated above, the Chase Defendants' motion to dismiss and for sanctions (Dkt. No. 9) is granted in part and denied in part; Defendant UDG's motion to dismiss or to transfer venue (Dkt. No. 19) is denied; and Plaintiffs' motion for partial summary judgment (Dkt. No. 34) is denied. Plaintiffs' earlier versions of the motion for partial summary judgment (Dkt. Nos. 30, 31) are denied as moot. Chase Enterprises I, LLC and Chase Enterprises, Inc. are dismissed as Defendants.

Entered:

Dated: October 28, 2014

Andrea R. Wood
United States District Judge